IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 96-20711
_____


UNITED STATES OF AMERICA,

                    Plaintiff-Appellee,

v.

BILAL TROY FARAHKHAN; TERRELL RAY BARNES;
RALPH TERRELL HAWKINS,

                    Defendants-Appellants.

_____

Appeal from the United States District Court
for the Southern District of Texas
(CR H 96-24)
_____
December 24, 1997
Before REYNALDO G. GARZA, KING, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

        Bilal Troy Farahkhan, Terrell Ray Barnes, and Ralph

Terrell Hawkins appeal their convictions and sentences for

conspiracy to possess with intent to distribute cocaine base and

possession with intent to distribute cocaine base under 21 U.S.C.

§§ 841(a) and 846.  We affirm the district court's judgments of

conviction and sentence.

_____

        [*] Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case began with a confidential informant (CI) contacting Police Officer Darrin Bush and telling him that someone wanted to sell eighteen ounces of crack cocaine for $600/ounce.  The seller and Officer Bush arranged to meet at a fast food restaurant.  Officer Bush went to the restaurant with another officer, and several other officers were near the restaurant in a back-up role.  At the restaurant, he met the CI and defendant Terrell Ray Barnes, the seller.  The CI and the other officer went into the restaurant, while Officer Bush and Barnes talked in Officer Bush's car.  Barnes counted the money and called his cousin, who he identified as "Bilal."

After about a half hour, defendant Bilal Troy Farahkhan arrived.  He wanted to count the money.  After being assured that the money had been counted, Farahkhan walked Officer Bush and Barnes around to the other side of the restaurant where they met Ivan Sledge in Sledge's car.  Sledge invited Officer Bush to get into the passenger seat of the car, but he refused because someone was in the backseat.  Defendant Ralph Terrell Hawkins, who was the person in the backseat, said "everything is cool" and that the dope was good.  Hawkins then invited Officer Bush to get into the car, but again he refused.  Sledge pulled a bag from the backseat and handed it to Officer Bush.  The bag contained crack

cocaine.  Officer Bush went to get the money and signaled the back-up officers to move in and make the arrests.

The other individuals were arrested, but Barnes ran from the scene and had to be chased over a couple of blocks.  In Sledge's car, a fully-loaded automatic pistol with a chambered round was found in the pocket behind the passenger seat directly in front of where Hawkins was sitting.  The pistol was completely concealed in the pocket, with the muzzle pointed down with the butt to the right.  The substance in the bag tested positive as cocaine base.

The above facts embody the government's presentation at trial.  The only defendant to put on a defense was Hawkins.  Hawkins presented character witnesses who testified that they could not believe that Hawkins would be involved in a drug transaction.  One witness also testified that Hawkins had a pre-existing head injury for which he was on medication that induced drowsiness and nausea.  Hawkins also took the stand and testified that he was at Sledge's house playing video games; while there, he took a nap and was awakened by Sledge who said, "let's go." According to Hawkins, he and Sledge got into Sledge's car with another man and went to the restaurant.  Hawkins claims that he laid down and went to sleep in the backseat and that he was awoken by the police.  He denied talking to Officer Bush or knowing that the gun was in the pocket in front of him.

3

Farahkhan, Hawkins, Barnes, and Sledge were charged with conspiracy to possess with intent to distribute cocaine base (crack cocaine) and with possession with intent to distribute cocaine base pursuant to 21 U.S.C. §§ 841(a) and 846. Sledge pled guilty, while the other three proceeded to trial. The jury found all three guilty of both charges. During the proceedings, the district court denied the defendants' motions to disclose the government's CI after an in camera examination of the informant. The court sentenced Farahkhan to two concurrent life terms with ten years of supervised release, a $10,000 fine, and a $100 special assessment. The court sentenced Barnes to two concurrent 240-month terms of imprisonment with ten years of supervised release, a $7500 fine, and a $100 special assessment. The court sentenced Hawkins to two concurrent 151-month terms with five years of supervised release, a $5000 fine, and a $100 special assessment. The defendants now bring this appeal.

## II. DISCUSSION

All three defendants raise challenges to their convictions and sentences, and Hawkins also appeals the denial of his motion for a new trial.

### A. Challenges to Conviction

All three defendants raise unsuccessful challenges to their convictions. All three defendants challenge the district court's denial of their motions to disclose the identity of the CI and

4

the district court's exclusion of defense counsel from the in camera examination of the CI.  Barnes argues that the reference to Sledge's guilty plea by Hawkins's counsel during opening argument denied him his right to a fair trial, and Farahkhan and Hawkins challenge the sufficiency of the evidence to support their convictions.

## 1.    In camera examination of confidential informant

The defendants argue that the district court erred when it excluded defense counsel and not the government from an in camera examination of the CI.  The district court solicited questions from the defendants for for the court to pose to the CI and stated that the government would not have the opportunity to ask any questions.  The defendants did not object to this procedure. At the in camera examination, the district court allowed the government to  ask questions relating to the CI's safety and possible future aid to law enforcement.  After the in camera examination, the court told defense counsel that he had allowed the government to ask questions, and they again did not object.

Exclusion of defense counsel from this type of in camera examination is within the discretion of the trial court.  <u>See</u> <u>United States v. Mendoza-Burciaga</u>, 981 F.2d 192, 196 (5th Cir. 1992).  The defendants failure to object drops our review to one for plain error.  Plain error review has four steps: (1) there must be error; (2) the error must be plain; (3) the error must be

5

prejudicial; and (4) the court must then exercise its discretion in determining whether to correct the error. United States v. Calverley, 37 F.3d 160, 162-64 (5th Cir. 1994).

This circuit has said that the recommended procedure for an in camera examination of a CI would include defense counsel who could be bound by an appropriate gag order. See id.; United States v. Singh, 922 F.2d 1169, 1172-73 (5th Cir. 1991). However, this court has held the exclusion of defense counsel from this type of examination to be within the discretion of the court as long as the court adequately protects the rights of the defendants. Mendoza-Burciaga, 981 F.2d at 196.

In considering this challenge, we have thoroughly examined the sealed transcript of the in camera examination. The district court's questioning covered all the questions that defense counsel had given him. The government's questioning was limited as described by the court. Although the district court may not have followed up some answers with questions defense counsel may have asked, we find that he adequately represented the defendants' interests in eliciting information related to the district court's decision on whether to disclose the identity of the confidential informant, which includes possible defenses. The district court's exclusion of defense counsel in this case does not constitute plain error, nor does the district court's failure to ask follow-up questions that defense counsel might have asked rise to the level of plain error because he adequately

6

represented the defendants' interests in eliciting facts related to the disclosure decision.[1]  Additionally, even if the exclusion of defense counsel was plain error, no prejudice that would require reversal resulted because the nondisclosure of the CI's identity was not an abuse of the district court's discretion as discussed below.

## 2.    Disclosure of confidential informant's identity

The defendants argue that the district court abused its discretion in failing to disclose the CI's identity because it denied them the ability to put on a defense.  According to the defendants, the CI was necessary to defense counsel's evaluation of the viability of an entrapment defense.  Without the CI, the defendants claim they could not even attempt to show that the CI badgered Barnes into performing the transaction or how the transaction was initiated.  The only suggestion of an entrapment defense in the record at the district court was in Barnes's questions for the CI; the defendants did not present any evidence of entrapment or request an entrapment instruction.

A court's denial of the disclosure of the identity of a CI is reviewed for an abuse of discretion.  United States v. De Los Santos, 810 F.2d 1326, 1333 (5th Cir. 1987).  Factual findings by the trial court in making its determination as to whether disclosure should occur are reviewed under a clearly erroneous

---

[1] We express no opinion as to whether this failure may have risen to the level of an abuse of discretion.

7

standard while its conclusions are reviewed for an abuse of discretion.  Mendoza-Burciaga, 981 F.2d at 195.

The Supreme Court has stated that whether a CI's identity should be disclosed requires a balancing of the needs of the defendant in preparing his defense against the public interest in a free flow of information to the police.  Roviaro v. United States, 353 U.S. 53, 62 (1957).  The Fifth Circuit performs this balancing by weighing three factors to determine if a CI's identity must be disclosed: "1) the informant's degree of involvement in the crime, 2) the helpfulness of the disclosure to the defense, and 3) the Government's interest in nondisclosure." United States v. Sanchez, 988 F.2d 1384, 1391 (5th Cir. 1993). If the CI is a mere tipster, the balancing favors nondisclosure. See United States v. Gonzales, 606 F.2d 70, 75 (5th Cir. 1979). However, a CI may be more than a mere tipster and still have minimal involvement in the criminal transaction supporting nondisclosure.  See United States v. Diaz, 655 F.2d 580, 588 (5th Cir. Unit B Sept. 1981) (finding that the CI was a mere "introducer").  While a defense of entrapment may sway the balance in favor of the disclosure of a CI's identity, United States v. Bower, 575 F.2d 499, 503 (5th Cir. 1978), a "mere allegation of entrapment is not sufficient in and of itself to force disclosure," Gonzales, 606 F.2d at 75.

From the facts in the public record, the CI was more than a mere tipster and at least an introducer because he brought

8

Officer Bush and Barnes together. The CI may have observed, but did not participate in, the transaction because he was inside the restaurant with another officer during the events in the restaurant parking lot--i.e., in a detached position. The public record only shows that the CI was minimally involved in the transaction, and the sealed transcript reveals nothing to suggest a greater role. The defendants' mere allegations of entrapment are not enough to favor disclosure, especially considering that the CI's answers to the only questions suggesting the entrapment defense actually undermined that defense.

Applying the balancing test, the district court denied the motion to disclose the CI's identity based upon his detached location in the restaurant from the transaction outside, the CI's inability to provide helpful information to the defendants, and the government's interest in the security and safety of the CI. After a careful review of the sealed transcript, we find no clear error in the district court's factual findings nor an abuse of discretion in its conclusions.

### 3. Hawkins's reference to Sledge's guilty plea

Barnes argues that the reference by Hawkins's counsel in his opening statement to Sledge's guilty plea denied Barnes the right to a fair trial. According to Barnes, defense counsel knew that Sledge would not be called as a witness and that his guilty plea therefore would not be admitted into evidence. Barnes failed to

9

object to this reference at trial or request a cautionary jury instruction, and he now argues that it is reversible error that the government did not request such an instruction.

Because of the failure to object, our review is for plain error. United States v. Leach, 918 F.2d 464, 467 (5th Cir. 1990). The government concedes that the reference to Sledge's guilty plea by codefendant's counsel constituted plain error, but it argues that no prejudice resulted from this error. This circuit has consistently found this reference when made by a prosecutor to be reversible plain error. See Leach, 918 F.2d at 467 (citing cases). However, this circuit has found a trial court's instructions to the jury to be curative and avoid prejudice where the codefendant's counsel has made the remark. See United States v. Robins, 978 F.2d 881, 888-89 (5th Cir. 1992); see also United States v. Ornelas-Rodriguez, 12 F.3d 1339, 1348-49 (5th Cir. 1994) (finding instructions to the jury and passage of time curative where the improper remark was made by the judge during voir dire). A specific instruction admonishing the jury from improperly considering a codefendant's guilty pleas in deciding the guilt of a defendant is not required. See United States v. Horton, 646 F.2d 181, 187 (5th Cir. Unit A May 1981) (finding codefendant's reference to codefendant's guilty plea in opening statements nonprejudicial where mention was brief and court instructed the jury to try each defendant separately considering only the evidence against each defendant).

10

Additionally, it is presumed that the jurors followed the court's instructions.  Ornelas-Rodriguez, 12 F.3d at 1349.

In Robins, a codefendant's counsel referred to the guilty pleas of coconspirators not on trial in that proceeding.  978 F.2d at 887.  Some of the coconspirators testified, but their guilty pleas were not entered into evidence.  Id. at 888.  The Robins court found that the district court's instructions that each defendant was to receive separate consideration, that opening statements were not evidence, and that a guilty plea by one person is not evidence of guilt of another erased any prejudice created by the remark in the opening statement.  Id. In addition, the Robins court found that if there was error it was harmless due to the "wealth of evidence" regarding the defendant's guilt.  Id. at 889.

The district court instructed the jury that statements by counsel were not evidence to be considered in their deliberations, that the jury is not concerned with the guilt or innocence of those not on trial in this case, and that each defendant and the evidence against him should be considered separately.  The absence of a specific guilty plea instruction is not dispositive here where no other factors in the trial would require the inclusion of such an instruction.  The district court's more general instructions cured any prejudice that may have resulted from the reference to Sledge's guilty plea, like

11

those in <u>Robins</u>.  The lack of prejudice bars a reversal under plain error review.  <u>See</u> <u>Calverly</u>, 37 F.3d at 162-64.

**4.    Sufficiency of the evidence**

Farahkhan and Hawkins argue that the evidence is insufficient to sustain their convictions for conspiracy to possess drugs with intent to distribute and for possession of drugs with intent to distribute.

We will affirm a jury verdict against a sufficiency of the evidence claim "'unless the evidence and all reasonable inferences, examined in the light most favorable to the government, would preclude reasonable jurors from finding a single conspiracy beyond a reasonable doubt.'"  <u>United States v. Puig-Infante</u>, 19 F.3d 929, 936 (5th Cir. 1994) (quoting <u>United States v. DeVarona</u>, 872 F.2d 114, 118 (5th Cir. 1989)).  Credibility determinations are left to the jury.  <u>United States v. Gardea Carrasco</u>, 830 F.2d 41, 44 (5th Cir. 1987).

To prove a conspiracy conviction, the government must show that an agreement existed to violate the drug laws, that the defendant knew of the conspiracy and intended to join it, and that the defendant voluntarily joined the agreement.  <u>United States v. Inocencio</u>, 40 F.3d 716, 725 (5th Cir. 1994).  No proof of an overt act is necessary to prove conspiracy under § 846.  <u>United States v. Shabani</u>, 513 U.S. 10, 13 (1994).  Proof of the conspiracy can be by concerted action and the whole of the

12

circumstances surrounding the drug transaction.  See <u>United States v. Lechuga</u>, 888 F.2d 1472, 1476-77 (5th Cir. 1989).  However, the defendant's mere presence at the scene of a drug transaction without knowledge of the drugs or of the transaction will not support a drug conspiracy conviction. <u>Gardea Carrasco</u>, 830 F.2d at 45.

To prove possession with intent to distribute, the government must prove knowledge of the drugs, possession of the drugs, and intent to distribute the drugs.  <u>United States v. Pedroza</u>, 78 F.3d 179, 183 (5th Cir. 1996).  Intent to distribute can be inferred from possession of a quantity of drugs too large for ordinary personal consumption.  United States v. Pineda-Ortuno, 952 F.2d 98, 102 (5th Cir. 1992).  Guilt on the conspiracy count establishes guilt on the possession count where it is shown that the defendants did possess with intent to distribute cocaine.  <u>See</u> <u>United States v. Mergerson</u>, 4 F.3d 337, 342-43 (5th Cir. 1993).  The possession conviction can also be established by showing that the defendant aided and abetted another, which requires proof that he associated with the criminal venture, purposefully participated in the venture, and acted in such a way as to make the venture successful.  <u>See</u> <u>United States v. Jaramillo</u>, 42 F.3d 920, 923 (5th Cir.), <u>cert. denied</u>, 514 U.S. 1134 (1995).

### a.   Farahkhan

13

Farahkhan argues that he cannot be guilty of possession with intent to distribute because the crack cocaine was never in his car or on his person. In addition, he argues that he was merely present at the scene of the transaction, and Officer Bush's testimony is not supported by any other evidence or testimony.

The evidence against Farahkhan shows more than mere presence. He has the same name as the person Barnes called from the restaurant, and he arrived at the restaurant after Barnes's phone call. Thereafter, he immediately came over to the car with Barnes and Officer Bush when they were awaiting the arrival of the drugs, asked to count the money, and led Barnes and Officer Bush to Sledge's car which carried the drugs after Officer Bush said that he wanted to see the dope. This evidence shows an active participation and interest in the transaction in that Farahkhan was involved in taking the officer to the drugs and was instrumental in delivering the drugs to the restaurant. The phone call by Barnes to get Farahkhan (Bilal) to deliver the drugs shows an agreement, as does the coordinated action of the defendants. Farahkhan was more than merely present, and his conspiracy conviction should stand because this evidence is sufficient to support a juror's finding of a conspiracy beyond a reasonable doubt.

The conspiracy conviction allows the possession of the drug by Farahkhan's coconspirators to be attributed to him. Even without the conspiracy count, Farahkhan aided and abetted the

14

others because his acts demonstrate that he associated with the criminal venture, purposefully participated in the venture, and acted in such a way as to make the venture successful. While unnecessary, the evidence collected at the scene and the testimony of the other officers corroborates Officer Bush's testimony.

### b.   Hawkins

Hawkins claims that the evidence supports his contention that he was merely present at the transaction and had no knowledge of the drugs. He argues that no credible evidence was presented at trial showing that he was a knowing member of any conspiracy. Hawkins also relies upon the fact that he testified and, according to him, the prosecution failed to elicit any evidence on cross-examination that would support his conviction.

Because Hawkins failed to renew his motion for a directed verdict at the close of all the evidence, any objection to the motion's denial is waived. United States v. Shannon, 21 F.3d 77, 83 (5th Cir. 1994). Therefore, our review of Hawkins's sufficiency challenge is "restricted to whether there has been a manifest miscarriage of justice" allowing reversal "only if the record is devoid of evidence pointing to guilt." Id. (citations and internal quotation marks omitted).

The record includes a great deal of evidence pointing toward Hawkins's guilt, which the jury obviously found to be credible.

15

Other than his presence, the evidence includes his arriving at the restaurant in the car that contained the drugs, his sitting in the backseat of the car with the drugs, his commenting on the quality of the drugs to Officer Bush, his inviting Officer Bush to have a seat in the car, and his sitting in the backseat in easy reach of a loaded pistol.  As these facts show, the record is not devoid of inculpatory evidence.  Hawkins's conspiracy and possession convictions are supported by the evidence under this level of review.[2]  Additionally, the fact that the government was unable to get Hawkins to incriminate himself on the stand does not draw the verdict into question.

## B.    Challenges to Sentence

All three defendants raise meritless challenges to their sentences.  Hawkins challenges the two-level increase to his offense level for possession of a firearm.  Barnes argues that the district court erred by applying the crack cocaine sentencing guidelines rather than the powder cocaine guidelines.  Farahkhan argues that his life sentence is unconstitutional.  We consider each of these arguments in turn.

---

[2] Even under our general standard of review of a jury verdict, Hawkins's conviction would stand because the evidence shows more than mere presence.  His acts are much more participatory, and they indicate that he was thoroughly involved in the transaction and reasonable jurors would not be precluded from finding beyond a reasonable doubt that he was part of the conspiracy.

## 1. **Increase to Hawkins's sentence for possession of a firearm**

Hawkins argues that the evidence is insufficient to support the district court's application of the sentencing guidelines two-level increase for possession of a firearm during commission of the crime. See U.S. SENTENCING GUIDELINES MANUAL § 2D1.1(b) (1995). A sentencing court's findings of fact need only be supported by a preponderance of the evidence and are reviewed under the clearly erroneous standard. United States v. McCaskey, 9 F.3d 368, 372 (5th Cir. 1993); see also United States v. Westbrook, 119 F.3d 1176, 1192-93 (5th Cir. 1997) (applying clear error review to two-level increase for a firearm in a drug possession with intent to distribute case), petition for cert. filed, (U.S. Nov. 3, 1997) (Nos. 97-6641 & 97-6667).

Sentencing Guidelines section 2D1.1(b)(1) provides: "If a dangerous weapon (including a firearm) was possessed, increase by **2** levels." U.S. SENTENCING GUIDELINES MANUAL § 2D1.1(b)(1) (1995). The comments to the Guidelines note that "[t]he adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense," as in the case where an unloaded weapon is in a closet. Id. Application Note 3. Section 2D1.1(b)(1) applies "where a temporal and spatial relationship exists between the weapon, the drug-trafficking activity, and the defendant." United States v. Marmolejo, 106 F.3d 1213, 1216 (5th Cir. 1997). In Marmolejo,

17

the district court did not apply the two-level increase because the defendant did not display or brandish the firearm. This court reversed because, in this circuit, only possession is necessary for the enhancement, not active use. Id.

The district court's finding that Hawkins possessed the firearm in connection with the crime is not clearly erroneous. The district court found that the firearm was in close proximity to Hawkins and arranged in a way that suggests he put it there. Therefore, the necessary relationship to the crime exists to invoke the two-level increase. A review of the record shows that it supports this finding, and the only evidence in conflict is the testimony of Hawkins.[3] We therefore hold that the district court's factual finding supporting the increase is not clearly erroneous and is supported by a preponderance of the evidence.

## 2. Crack versus powder cocaine

Barnes argues that the court plainly erred in applying the cocaine base (crack cocaine) guidelines, which require a higher sentence than the powder cocaine guidelines for the same weight of illegal drugs. See U.S. SENTENCING GUIDELINES MANUAL § 2D1.1(c).

---

[3] Hawkins claims that a polygraph test taken by Sledge shows that he had no knowledge of the gun. The record does not include this evidence, but the sentencing hearing transcript includes references to the polygraph. Without deciding whether the polygraph was or should have been considered or whether the failure of the defendant-appellant to include it in the record bars our consideration of the evidence, we do not think that the polygraph evidence would alter the result of affirming the district court's fact-finding in relation to Hawkins's possession of the firearm.

18

He does not dispute that the drug he is convicted of trying to sell was crack cocaine, but argues that the guidelines make a meaningless distinction between crack and powder cocaine. Barnes therefore argues that he should have been sentenced under the powder cocaine guidelines under the rule of lenity. Barnes's claim is meritless in light of United States v. Flanagan, 87 F.3d 121, 123 (5th Cir. 1996), in which this court has rejected this same argument.

### 3.    Farahkhan's life sentence

Farahkhan was sentenced to life imprisonment pursuant to the enhancement provisions of 21 U.S.C. § 841(1)(b), which require a life sentence when the defendant has two prior felony drug convictions. Farahkhan did not object to this sentence before the district court, but he now argues that the sentence violates the Eighth Amendment as grossly disproportionate to the seriousness of his crime. He argues that possession with intent to distribute over 400 grams of crack cocaine is a "victimless" crime that is not so serious as to merit life imprisonment. We find no error in his sentencing.

This court can consider an Eighth Amendment challenge only if a sentence is grossly disproportionate to the offense. See United States v. Gonzales, 121 F.3d 928, 942 (5th Cir. 1997) (upholding a 438-month sentence for 1,998.4 grams of cocaine including an enhancement for use of a machine gun), petition for

19

cert. filed, (U.S. Nov. 26, 1997) (No. 97-6904). Rummel v. Estelle, 445 U.S. 263 (1980), is the benchmark for this review for gross disproportionality. Gonzales, 121 F.3d at 943. In Rummel, the defendant was sentenced to life imprisonment for a conviction of obtaining $120.75 by false pretenses under a recidivist statute that mandated the sentence for any offender with three felony convictions; the Supreme Court upheld the sentence as constitutional. 445 U.S. at 266, 284-85. Farahkhan's life sentence for selling over 400 grams of crack cocaine for $10,800 is less disproportionate in relation to the sentence in Rummel. See also Harmelin v. Michigan, 501 U.S. 957, 996 (1991) (upholding a mandatory life sentence for 672 grams of cocaine under a Michigan statute not requiring prior felony convictions); United States v. Davis, 61 F.3d 291, 305 (5th Cir. 1995) (upholding life sentence where cocaine was measured in kilograms), cert. denied sub nom., Jefferson v. United States, 116 S. Ct. 961 (1996); cf. United States v. Cooks, 52 F.3d 101, 105 (5th Cir. 1995) (upholding life sentence under § 841(b)(1) for 3.5 ounces of crack cocaine (about 99 grams) where the defendant had two prior drug convictions, but reasoning that Harmelin had entirely disposed of proportionality review[4]).

---

[4] In Harmelin v. Michigan, 501 U.S. 957 (1991), the Supreme Court did not completely dispose of any Eighth Amendment proportionality requirement. See Magruder v. Puckett, 954 F.2d 313, 316 (5th Cir. 1992); see also Gonzales, 121 F.3d at 942-43, 943 n.11 (citing Magruder). The earlier of two conflicting panel opinions from this circuit is controlling. Broussard v. Southern

20

Following this precedent, Farahkhan's life sentence cannot be considered grossly disproportionate and therefore does not violate the Eighth Amendment. His argument that this is a "victimless" crime is, at least, meritless.

## C.    Denial of Hawkins's Motion for a New Trial

After the close of trial, Hawkins made a motion for a new trial based upon the prosecution's failure to turn over pre-trial statements by Sledge that Hawkins had no knowledge of the gun or the drug transaction in violation of Brady v. Maryland, 373 U.S. 83 (1963). According to the Assistant United States Attorney representing the government at Sledge's July 25, 1996 sentencing hearing, Sledge stated that Hawkins did not know about the gun or the drug deal at the government's attempted debriefing of Sledge on April 27, 1996 which was two days before the trial commenced.[5] The district court denied Hawkins's motion for a new trial because Hawkins knew that Sledge had pleaded guilty and knew of the evidence because he testified at trial that he had overheard

_____

Pac. Transp. Co., 665 F.2d 1387, 1389 (5th Cir. 1982) (en banc).

[5] At oral argument and in a post-submission filing, the same Assistant United States Attorney claimed that the government did not know of Sledge's statements until after the trial began. A review of the record finds the above statement in the text in a transcript of Sledge's sentencing hearing attached to the government's response to Hawkins's motion for a new trial. We are concerned by the Assistant United States Attorney's failure to uncover this information and make the court aware of it in his post-submission filing after denying knowledge of the statement prior to trial in oral argument.

Sledge tell the police at their arrest that he was asleep and not involved in the drug transaction.

A denial of a motion for a new trial is reviewed for an abuse of discretion.  United States v. Dula, 989 F.2d 772, 778 (5th Cir. 1993).  However, a district court's Brady determinations are reviewed de novo.  East v. Johnson, 123 F.3d 235, 237 (5th Cir. 1997).  To succeed on a motion for new trial on a Brady violation, Hawkins must show "that (1) the prosecution suppressed or withheld evidence (2) favorable to the defense and (3) material to guilt or punishment."  Id.  Brady does not require the prosecution to direct the defendant to evidence of which the defendant is already in possession, that he could discover by exercising due diligence, or that is available from other sources.  Rector v. Johnson, 120 F.3d 551, 558-59 (5th Cir. 1997), petition for cert. filed, (U.S. Nov. 13, 1997) (No. 97-6761).  Evidence is not "suppressed" if the defendant knew of the essential facts contained in the exculpatory evidence in the government's possession.  See Lawrence v. Lensing, 42 F.3d 255, 257 (5th Cir. 1994).

Hawkins's own testimony defeats his Brady claim.  He testified that he (1) knew Sledge, (2) knew Sledge was the driver of the car that brought him while sleeping to the restaurant and that delivered the drugs to the restaurant, and (3) heard Sledge tell the police that Hawkins was not involved in the drug transaction and had no knowledge of the drugs or the gun.

22

Hawkins and his counsel were also aware that Sledge had pleaded guilty prior to trial. Hawkins, by his own testimony, knew what was contained in the exculpatory statements made by Sledge to the government at the attempted debriefing and could have interviewed him or called him as a witness. Therefore, the government did not improperly suppress any evidence, and Hawkins cannot claim that he would have called Sledge as a witness if he had known of Sledge's statements to the government because he already had the information contained in them. For the same reasons, the district court properly denied Hawkins's motion for a new trial under the standard for newly discovered evidence because the information contained in Sledge's statements was not discovered following trial. See Unites States v. Ugalde, 861 F.2d 802, 808 (5th Cir. 1988) (setting out the newly discovered evidence standard, which requires among other things that the evidence was discovered following the trial).

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment of conviction and sentence for each of the defendants.

23